IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SCOTT SIPE,

     Plaintiff,

v.                                              No. 3:18-CV-1165-S-BT

MICHAEL NORRIS et al.,

     Defendants.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil rights action is Defendants' Motion for Summary Judgment (ECF No. 14). For the reasons stated, the District Court should GRANT Defendants' Motion.

## Background

Plaintiff Scott Sipe filed this lawsuit in the 196th District Court of Hunt County, Texas, on March 14, 2018, naming Sergeant Michael Norris, Deputy Jon Knudson, and the Hunt County Sheriff's Department as Defendants. Ex. 3 (ECF No. 1-3). Defendants later removed the case to federal court under 28 U.S.C. § 1331. Notice of Removal (ECF No. 1). Pursuant to the Court's June 27, 2018 Order (ECF No. 7), Plaintiff timely filed an Amended Complaint, adding Hunt County Sheriff Randy Meeks as a defendant. Am. Compl. (ECF No. 8).

In his live pleading, Plaintiff alleges that on March 14, 2016, he had been drinking but stopped after he was "dropped off." Am. Compl. Ex. 1. Once home,

1

Plaintiff looked for his gun to protect himself and his family because he had received "death threats from some males that [he] had problems with before." *Id.* When he did not find it, he called 9-1-1 to report it as stolen, but, Plaintiff claims, the dispatcher told him that no officers were available to respond. *Id.* Plaintiff maintains that he called 9-1-1 two more times but "was frustrated because no one would take a report." *Id.*

Then, Plaintiff alleges, Defendants Sergeant Norris and Deputy Knudson arrived at his home "and approached him in an aggressive manner with tazers [sic] already drawn." *Id.* Defendants spoke to his fiancée, Kerrie Keeling, and then told Plaintiff that they were arresting him for abuse of 9-1-1. *Id.* Plaintiff contends that, because he "failed to comply with an unlawful order," Defendant Norris shot him. *Id.* Plaintiff further alleges that as a result of the gunshot wound to his upper right abdomen, he suffered injury to his kidney and large and small intestines. *Id.* Plaintiff contends that because of this incident he lost his vehicle and was evicted. *Id.*

Based on this incident, Plaintiff asserts claims against Defendants under the First, Fourth, and Fourteenth Amendments. Defendants answered Plaintiff's Amended Complaint and later filed their Motion for Summary Judgment. Def. Meeks Answer (ECF No. 10); Defs.' Answer (Defendants Norris and Knudson) (ECF No. 11). Defendants argue that they are entitled to summary judgment because (1) they did not violate Plaintiff's First, Fourth, or Fourteenth Amendment rights, and (2) they are entitled to qualified immunity. Defs.' Br. 10 (ECF No. 15).

Plaintiff responded to Defendants' Motion, and Defendants subsequently filed a reply. Pl.'s Resp. (ECF No. 18); Defs.' Reply (ECF No. 22). Accordingly, the issues are fully briefed, and the Motion is ripe for determination.

## Preliminary Matters

As a preliminary matter, Defendants object to Plaintiff's summary judgment evidence, which consists of what appears to be copies of medical records for Defendant Norris; affidavits from other law enforcement officers, including a Caddo Mills police officer and a Hunt County Sheriff's deputy; and copies of various Texas penal statutes. Defendants argue that this evidence is unauthenticated hearsay, and, as such, is not competent summary judgment evidence. The Court agrees. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) (citations omitted) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial.").

Plaintiff also filed a surreply (ECF No. 23) consisting of three typed pages that purport to be a letter from Plaintiff's mother, Lori Dunham. Defendants request that the Court strike this evidence as an improper surreply and because the purported letter is not competent summary judgment evidence. (ECF No. 24). Defendants' request is granted.

> Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. The

> court has found that surreplies usually are not that
> helpful in resolving pending matters, and only permits
> pleadings beyond Local Civil Rule 7.1 in exceptional or
> extraordinary circumstances.

*Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001).

Plaintiff, as the nonmovant with respect to Defendants' summary judgment motion, filed (1) an objection to Defendants' motion and (2) additional evidence in support of his objection, on September 17 and 19, 2018, respectively. These filings constitute Plaintiff's response. Defendants filed their reply on October 11, 2018, at which point the motion was fully briefed. Plaintiff filed the purported letter on October 16, 2018. Plaintiff did not obtain leave of court to file the letter and has not shown that exceptional or extraordinary circumstances exist to justify the filing of a surreply. Additionally, the letter is unauthenticated hearsay and is not competent summary judgment evidence. Accordingly, Plaintiff's surreply will not be considered for any reason.

## Legal Standard

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that

right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Hanks v. Rogers*, 853 F.3d 738, 746-47 (5th Cir. 2017) (emphasis added) (citing *White*, 137 S. Ct. at 551). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (internal quotation marks omitted); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

A court reviews a motion for summary judgment based on qualified immunity in two steps; it must first decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *see also Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 305 (2015) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). Second, the court must decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (citation and internal quotation marks omitted). This requires determining "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511 (citation and quotation marks omitted). In other words, "whether it would

have been clear to a reasonable officer in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)) (internal quotation marks and brackets omitted). Though the court may consider either step first, "deciding the two prongs in order 'is often beneficial.'" *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Pearson*, 555 U.S. at 236).

Once a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). Nevertheless, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' . . . 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (first quoting *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); then *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

Qualified immunity is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant engaged in the conduct at issue, or (2) the court "skip[s], for the moment, over . . . still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays Cty.*, 723 F.3d 586, 599 (5th Cir. 2013) (brackets and ellipses in original) (internal quotation marks and citation omitted). If resolution of qualified immunity at the summary judgment stage involves a fact question as to what the defendant did, rather than whether the defendant is immune for what he did, then "the case is inappropriate for summary judgment on the basis that the defendant did not engage in conduct violative of the plaintiff's rights." *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981). However, a defendant can pretermit the question of whether he engaged in the offending conduct to present the qualified immunity issue because "[t]here is no point in going to trial to determine whether the officer engaged in the complained-of conduct if the officer would be immunized from liability even if he did engage in that conduct." *Id.* at 1124. Even so, where a defendant establishes beyond dispute that he did not engage in the offending conduct, then summary judgment may still be appropriate. *Id.* But "[a] summary judgment on [those] grounds . . . has nothing to do with the qualified immunity defense; rather, it is based on the plaintiff's inability to prove the facts essential to recovery . . . ." *Id.* (citation omitted). Similarly, when the offending conduct, even if it did occur, does not amount to a violation of the plaintiff's constitutional rights, then summary judgment may be proper, though "[that] summary judgment would

not be based on qualified immunity grounds, but instead on the lack of a legally sufficient predicate for section 1983." *Id.*

When a plaintiff cannot prove the necessary facts essential to recovery, summary judgment is proper. Fed. R. Civ. P. 56. Ordinary summary judgment under the Federal Rules is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when a trier of fact could resolve the dispute in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## Analysis

After reviewing the summary judgment evidence, the Court finds that no fact issue exists regarding Plaintiff's First, Fourth, or Fourteenth Amendment claims against Defendants entitling them to summary judgment. Accordingly, the Court does not reach the issue of whether Defendants are entitled to qualified immunity. The Court will address Plaintiff's First and Fourteenth Amendment claims before turning to his Fourth Amendment claim.

### I. First Amendment

Defendants are entitled to summary judgment with respect to Plaintiff's First Amendment claim because the evidence raises no fact issue regarding

whether Defendants' conduct violated Plaintiff's First Amendment rights. "The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2463 (2018). The Supreme Court has made clear that "freedom of speech" encompasses "both the right to speak freely and the right to refrain from speaking at all." *Id.* (citations omitted). "'[P]ure speech,'" as distinct from symbolic or commercial speech, "is entitled to comprehensive protection under the First Amendment." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (citations omitted); s*ee Virginia v. Black*, 538 U.S. 343, 360 n.2 (2003) ("[T]he First Amendment protects symbolic conduct as well as pure speech.") (citation omitted); *Matter of Nat'l Serv. Corp.*, 742 F.2d 859, 861 (5th Cir. 1984) ("TAC argues that the district court erred by concluding that its message was mere commercial speech and contends that its message was an expression of pure speech entitled to unfettered first amendment protection. We agree.").

In his Complaint, Plaintiff alleges, "Michael Norris Sergeant Hunt County sherrifs [sic] department took away my right to speak under the first amendment under pure speech." Am. Compl. 1. In part two of his Complaint, Plaintiff asserts that "by doing the acts described in [the fact section] Defendants caused and/or permitted the violation of [his] first amendment rights for freedom of speech." Am. Compl. Ex. 2. However, Plaintiff presents no evidence in support of his conclusory allegations to show that Defendants prevented him from speaking freely or

9

compelled him to speak at all. When no reasonable juror could find for the nonmovant based on the summary judgment evidence, no genuine issue of material fact exists. *Rutherford v. Muniz*, 280 F. App'x 337, 338 (5th Cir. 2008) (per curiam). Because no fact issue exists as to whether Defendants violated Plaintiff's First Amendment right to free speech, they are entitled to summary judgment with respect to Plaintiff's First Amendment claim.

## II. Fourteenth Amendment

Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim because, in view of all the evidence, no fact issue exists regarding whether Defendants' conduct violated Plaintiff's Fourteenth Amendment rights. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property [without due process]; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In Plaintiff's Complaint, he alleges that Defendant Norris violated his Fourteenth Amendment rights "by not investigating the matter in a professional manner." Am. Compl. 1. He also generally asserts a Fourteenth Amendment due process claim against all the Defendants, who Plaintiff maintains, "caused and or permitted the violation of [his] . . . right to due process guaranteed by the fourteenth amendment." Am. Compl. Ex. 2. Plaintiff does not mention the Fourteenth Amendment anywhere else; thus, the Court concludes that he asserts only a due process claim under the Fourteenth Amendment.

With respect to his due process claim, Plaintiff does not identify a particular liberty interest that was compromised, nor does he allege any facts or present any evidence substantiating his bare allegations. Plaintiff only claims that Defendant Norris did not investigate "the matter" in a professional manner; however, Defendant Norris's professionalism, or lack of professionalism, does not by itself implicate a liberty interest protected by the Fourteenth Amendment. Because no reasonable jury could find for Plaintiff, no genuine issue of material fact exists as to whether Defendants violated Plaintiff's Fourteenth Amendment due process right. *See Rutherford*, 280 F. App'x at 338. Accordingly, Defendants are also entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

### III. Fourth Amendment

<u>A. Unreasonable Seizure</u>

Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment unreasonable seizure claim because, after reviewing the summary judgment evidence, no fact issue exists as to whether any Defendant unlawfully arrested Plaintiff. "The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Probable cause "exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Id.* (quoting *Spiller v. Texas City,* 130 F.3d 162, 165 (5th Cir. 1997)). Further, an officer is entitled to qualified immunity for an arrest

"if a reasonable person in [his] position could have believed he had probable cause to arrest" that person. *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).

Plaintiff asserts that Defendant Norris violated his Fourth Amendment right "by trying to place [him] under arrest while [he] sat calmly on the back of the truck." Am. Compl. 1. He further alleges generally that "Defendants caused and/or permitted the violation of the plaintiffs [sic] fourth and Fourteenth amendment right to be free from unreasonable searches and seizures." Am. Compl. Ex. 2. The evidence, however, establishes that there is no fact issue that Defendants had probable cause to believe Plaintiff had committed the offense of making an abusive call to 9-1-1, in violation of Tex. Penal Code § 42.061.[1]

Defendants' summary judgment evidence establishes that, prior to arriving at the scene of the incident, Defendant Knudson communicated with the dispatcher, Officer Harrison, via radio; the first time he spoke with her, she "advised [him] that she had had three (3) abusive 911 calls from [Plaintiff]." Defs.' App. 3 (ECF No. 16). On the first call, Plaintiff told Officer Harrison that his mother stole his gun and that he wanted it back immediately. *Id*. Officer Harrison informed him that his call was not a priority call and that she would send an officer

---

[1]    Under Texas Penal Code § 42.061(b), a person commits a Class B misdemeanor "if the person makes a call to a 9-1-1 service, or requests 9-1-1 service using an electronic communications device, when there is not an emergency and knowingly or intentionally . . . makes abusive or harassing statements to a [public safety answering point] employee." Tex. Penal Code § 42.061(b).

to his location when one became available. *Id*. On the second call, Plaintiff asked what he needed to do for his call to be a priority call and if murdering someone would qualify. *Id*. Officer Harrison asked Plaintiff if he intended to murder someone, and he said, "he was going to do so as soon as he got his gun back." *Id*. 3-4. Officer Harrison stated that on all his 9-1-1 calls, Plaintiff "was rude, belligerent and abusive and was continually cussing her out." *Id*. 4. Defendant Knudson relayed the information Officer Harrison conveyed about Plaintiff's abusive 9-1-1 calls to Defendant Norris. *Id*. 4, 11. While Defendant Knudson drove to Plaintiff's location, Officer Harrison radioed to tell him that she received three more 9-1-1 calls from Plaintiff. *Id*. Once on the scene, Defendant Norris advised Plaintiff that "he was coming with [them]" because of "the many abusive 911 calls he had made that night." *Id*. 5, 12.

Plaintiff does not controvert Defendants' evidence. In fact, in his Complaint, Plaintiff avers that he called 9-1-1 several times and that "[he] was frustrated because no one would take a report." Am. Compl. Ex. 1. Based on Defendant Knudson's conversations with Officer Harrison, Defendants could have reasonably concluded that Plaintiff committed the offense of "Silent or Abusive Calls to 9-1-1 Service." *See* Defs.' App. 4, 11. Therefore, after reviewing the summary judgment evidence, the Court finds no fact issue as to whether Plaintiff's arrest was supported by probable cause. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment unreasonable seizure claim.

## B. Excessive Force

Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim because the evidence raises no fact issue regarding whether Defendants used excessive force. In Plaintiff's Complaint, he alleges that "SGT Michael Norris filed a single round from a .40 caliber pistol into the upper right part of the abdomen," and that he suffered a "[g]un shot wound upper right abdomen, large and small intestine injury, kidney injury, and colon injury." Am. Compl. 1. He maintains that when Defendants Norris and Knudson arrived on the scene, they "approached [him] in an aggressive manner with tazers [sic] already drawn." Am. Compl. Ex. 1. He contends that he "didn't comply with an unlawful order and . . . was shot for it." *Id.* The Court construes these allegations as a Fourth Amendment excessive force claim.

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). The amount of force that is reasonable under the Fourth Amendment "'is not capable of precise definition of mechanical application,'" and "requires careful attention to the facts and circumstances of each particular case." *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)). To bring an excessive force

claim, a plaintiff must establish "'(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'" *Goodson*, 202 F.3d at 740 (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). "To gauge the objective reasonableness of the force used by a law enforcement officer," a court "must balance the amount of force used against the need for force, paying careful attention to the facts and circumstances of each particular case." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (internal citation and quotation marks omitted). The "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) (citing *Tennessee v. Garner,* 471 U.S. 1 (1985)). The reasonableness inquiry, however, is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"; this allows for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

In this case, the evidence establishes that after Defendants Norris and Knudson arrived at the scene, Plaintiff "was seated on the tailgate of a pickup truck" and "holding a glass beer bottle"; his fiancée, "standing next to the tailgate," stated that "she had given the gun to [Plaintiff's] mother because he had been drinking." Defs.' App. 5, 12. Defendants Norris and Knudson informed Plaintiff

that they were arresting him for his abusive 9-1-1 calls. *Id.* Plaintiff resisted arrest, "defiantly stat[ing] he wasn't going anywhere and wasn't going to be arrested," and "refused to comply" with Defendant Norris's order to "get down from the tailgate of the truck and turn around to be placed in handcuffs." *Id.* 5-6, 12. Defendant Norris ordered Plaintiff several more times to get down from the truck and place his hands behind his back; he continued to refuse. *Id.* 6, 12. Defendant Norris then informed Plaintiff that he would tase him if he did not comply. *Id.*

When Plaintiff still did not comply, Defendant Norris reached out to remove the beer bottle from Plaintiff's hand, fearing that he would assault him with it, and Plaintiff got down from the truck and punched Norris in the face twice. *Id.* 6, 13. Defendant Norris then tased Plaintiff, but the taser had no effect. *Id.* Defendant Knudson then tased Plaintiff with his "new double-shot Taser," but it also had no effect on him. *Id.* 6, 14. After Defendant Knudson tased Plaintiff, Plaintiff "hit [him] with his fist and arm across [his] back"; "[t]he force . . . knocked [Knudson] to the ground, causing injury to [his] left arm and knock[ing] [his] glasses and [his] shirt microphone . . . onto the street." *Id.* 6, 14. Defendant Norris then yelled twice, "Stop or I will shoot!" *Id.* 6, 14. Plaintiff "looked [Norris] in the eye and told [him] to go ahead and shoot him," and "then took two very quick steps toward [him]." *Id.* 14. Defendant Norris then shot Plaintiff in the abdomen. *Id.* 6-7, 14.

Plaintiff does not offer any competent summary judgment evidence disputing these events. Plaintiff's unsworn, self-serving denials that he "did not attack either officer," that "Sergeant Norris injured himself when [Plaintiff] stood

up and began to run," and that there were "NO warnings [ ] Sergeant Norris was about to shoot," Pl.'s Resp. 1, are simply not sufficient to raise a fact question as to the objective reasonableness of the force used. To the contrary, the evidence establishes there is no genuine dispute that a reasonable officer in the Defendants' position would have reason to believe that Plaintiff posed a threat of serious bodily harm to the officers or others after he resisted arrest, used physical force against the Defendants, and was unaffected by Defendants' tasers. Because no fact issue exists as to whether Defendants' use of force was objectively reasonable and commensurate to the situation's need, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim.

## C. Supervisory Liability

To the extent that Plaintiff asserts First, Fourth, and Fourteenth Amendment claims separately against Defendant Meeks on a supervisory-liability theory, Defendant Meeks is entitled to summary judgment on those claims. "Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted); *see also Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) ("Section 1983 does not create vicarious or *respondeat superior* liability.") (citing *Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987)). Instead, "a plaintiff must show either the supervisor personally was involved in the constitutional

violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett*, 330 F.3d at 689 (citing *Thompkins,* 828 F.2d at 304; *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.")). Supervisors are held to a "standard of deliberate indifference, which requires proof that the supervisor disregarded a known or obvious consequence of his action," and does not include unintentional oversights. *Id.* (citation and internal quotation marks omitted). Specifically, to bring a failure-to-train or supervise claim, a plaintiff must establish "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Perniciaro v. Lea*, 901 F.3d 241, 259 (5th Cir. 2018) (quoting *Estate of Davis ex rel. McCully*, 406 F.3d at 381) (internal quotation marks omitted).

Plaintiff asserts his First, Fourth, and Fourteenth Amendment claims, detailed above, against all three Defendants: Norris, Knudson, and Meeks. Am. Compl. Ex. 2. In his Complaint, Plaintiff also maintains "Randy Meeks Sheriff Hunt County Sheriffs department emotional distress and being the supervisor should apply more training in the near future so this account doesn't happen again I believe Randy Meeks should be held accountable for his men at all times." Am. Compl. 1. Because the Court determines that no fact issue exists as to whether

Defendants Norris and Knudson, the officers with whom Plaintiff interacted, violated Plaintiff's First, Fourth, or Fourteenth Amendment rights, there is no evidence of a constitutional violation that could give rise to Defendant Meeks's liability. Accordingly, Defendant Meeks is entitled to summary judgment on all of Plaintiff's claims asserted against him on a theory of supervisory liability.

## IV. § 1988 Attorney's Fees

In the final sentence of Defendants' brief, they ask the Court to award them attorney's fees and costs pursuant to 42 U.S.C. § 1988. Defs.' Br. 45. "[T]he court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fee as part of the costs" in cases brought under § 1983. 42 U.S.C. § 1988(b). "Prevailing parties" under § 1988 are those parties that "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).

"Although attorney's fees for prevailing plaintiffs are almost always awarded, attorney's fees for defendants are only awarded 'upon a finding that that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *DeRamus v. City of Alexandria*, 675 F. App'x 408, 412 (5th Cir. 2017) (per curiam) (quoting *Fox v. Vice*, 563 U.S. 826, 833 (2011); *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1978)). Indeed, "attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit."

19

*Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001); *see also Nieman v. Milam*, 2018 WL 2604862, at *1 (N.D. Tex. May 11, 2018), *adopted by* 2018 WL 2575231 (N.D. Tex. June 4, 2018). "The 'stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail.'" *Myers v. City of West Monroe*, 211 F.3d 289, 292 n.1 (5th Cir. 2000) (quoting *Aller v. N. Y. Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y. 1984)).

In determining whether an action was frivolous, the Court must determine "whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991) (citing *Jones v. Tex. Tech. Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981); *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140-41 (5th Cir. 1983)). The fact that claims were dismissed before trial is not sufficient by itself to support a finding of frivolity. *Myers*, 211 F.3d at 293 (citing *Hidden Oaks, Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998)). Courts are generally reluctant to award fees to a prevailing defendant unless the plaintiff "refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest." *Pisharodi v. Valley Baptist Med. Ctr.*, 393 F. Supp. 2d 561, 578 (S.D. Tex. 2005) (citations and internal quotation marks omitted).

Even in the face of a finding of frivolity, however, the court retains discretion to deny a fee request in view of the circumstances of a particular case. *Williams-*

*Boldware v. Denton Cty.*, 2013 WL 12242263, at *1 (E.D. Tex. Jan. 3, 2013) ("A determination that a complaint was frivolously filed, however, does not require *a fortiori* an award of attorneys' fees to even a prevailing Defendant.") (citing *Tang v. R.I. Dep't of Elderly Affairs*, 163 F.3d 7, 15 (1st Cir. 1998). Finally, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

Defendants' request for fees is not adequately briefed or supported by the record. Defendants present no argument, much less evidence, that would compel the conclusion that Plaintiff knowingly asserted a frivolous claim; nor have Defendants come forward with any evidence documenting the time spent defending this action or the hourly rates of any attorney who worked on the case. In the absence of such argument or evidence, the Court should decline to exercise its discretion to award attorney's fees to Defendants under § 1988.

<u>**RECOMMENDATION**</u>

For the reasons stated, the District Court should GRANT Defendants' Motion for Summary Judgment (ECF No. 14) and DISMISS WITH PREJUDICE Plaintiff's claims against them. Further, the District Court should DENY Defendants' request for attorney's fees.

**SO RECOMMENDED**.

March 6, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).